GRIMES, Judge.
This case involves the interpretation of an agreement between The National Reference Society, Inc. (Society) and Federated Credit Corporation (Federated). Society was engaged in the sale of books and other publications on retail installment contracts. The purpose of the agreement was to provide financing for Society through the discounting of its installment contracts.
After describing which installment contracts (accounts) were to be sold to Federated, paragraph 1.0 specified:
“. . . FEDERATED will advance to SOCIETY at the time of purchase of accounts 80% of the total ‘wrapped up’ price thereof; and the remaining 20% will be paid to SOCIETY in proportionate amounts out of collections (including down-payments) of such accounts from the parties indebted thereon (hereinafter the ‘DEBTORS’) by periodic refunds of deposits in the ‘Special’ accounts further described below. No such payments need be made by FEDERATED in respect of any accounts purchased or assigned hereunder if Society is in default in the performance of any provisions of this agreement. ...”
Paragraph 2.0 provided that Federated would charge Society and deduct from the advance at the time of the purchase of each account an amount equal to 15% of the total “wrapped up” price thereof. Paragraph 4.0 stated in part:
“FEDERATED hereby appoints SOCIETY and SOCIETY agrees to act at SOCIETY’S sole expense as FEDERATED’s Agent for the purpose of receiving collections of sums due or to become due by the terms of any contract with an account purchased by FEDERATED.
“. . . All monies and remittances received by SOCIETY from the contracts assigned FEDERATED shall be held in trust by SOCIETY for FEDERATED and are to be deposited daily in a ‘Special’ Reference Society bank account to be opened in the First National Bank of Tampa, Tampa, Florida, or such other bank as may be designated in writing from time to time by FEDERATED upon which only FEDERATED shall be permitted to draw. . . . ”
The agreement further provided that after an account became delinquent for more than three months, Society was required to repurchase it for a payment equal to 65% of the unpaid balance due thereon. The agreement specified that Society should pay to Federated all attorneys’ fees, court costs and other expenses incurred by reason of Society’s violation of its obligations under the agreement.
At some point, Society began to keep all of the payments being made on accounts sold to Federated. In Federated’s suit for an accounting which ensued, Society admitted having received and kept payments totalling $21,787.45. The court entered a judgment against Society for this amount plus $3,500.00 attorneys’ fees and costs.
In this appeal, Society first argues that the court should have limited that portion of Federated’s judgment not involving attorneys’ fees and costs to 80% of $21,787.45, to-wit: $17,429.96. We agree.
The agreement was calculated to return to Federated a profit equal to 15% of the total “wrapped up” price of each account. This was to be derived by paying 65% to Society when the account was purchased and receiving 80% of the payments as they were made. The other 20% of the payments would go to Society. By permitting Federated to take 100% of the collections, the lower court placed Federated in a better position than it would have been had the contract been fully performed.
Federated argues that this was a suit for an accounting directed to having Society account for funds which the agreement called for to be paid to Federated. While this may be so, one is not entitled to recover in an accounting action any more than *650 that to which he is entitled. It clearly appears that Federated was only entitled to retain 80% of the monies paid to it out of the special account with the other 20% being returned to Society.
Federated further suggests that the last sentence of paragraph 1.0 quoted above permits Federated to keep all the monies collected on the accounts in the event Society defaults under the agreement. While we doubt if this is what that provision means, if it does, it could not be enforced because it would constitute a penalty. Greenblatt v. McCall & Co., 1914, 67 Fla. 165, 64 So. 748.
Society’s contention that the language in the agreement is not specific enough to permit the court to assess attorneys’ fees against it is without merit.
The judgment is modified to the extent that it is reduced by $4,357.49; in all other respects, the judgment is affirmed.
HOBSON, A. C. J., and BOARDMAN, J., concur.